UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                    Case No. 8:19-cr-544-TPB-TGW

**ALBERTO MENDOZA**
_____/

**Sentencing Memorandum Including Factors that May Warrant a Sentence Outside of the Advisory Guideline System**

**COMES NOW**, the Defendant, **ALBERTO MENDOZA**, by and through undersigned counsel, and files this memorandum concerning factors that may warrant a sentence outside of the currently calculated advisory guideline system. As grounds in support thereof, Mr. Mendoza states as follows:

Mr. Mendoza is a 46-year-old from Carupano, Sucre, Venezuela. He is a lifelong Venezuelan resident. Prior to his arrest, he and his family resided in Margarita, Venezuela in a residence on property owned by his wife. The house has mostly unfinished rooms. They use three, two bathrooms and a kitchen and dining room that are unfinished. While the residence has running water and electricity, the residence is a very humble structure by the standards in the United States, with a tin roof. He, his wife, and his 3 adult children lived at the residence.

Mr. Mendoza is one of eight siblings, born of the relationship of his parents, and all of whom reside in Venezuela. His mother is a homemaker and his father is

a retired fisherman. They remain married. The defendant indicated that throughout his childhood, he had the basic necessities of food, water and shelter. However, there was little extra beyond the basic necessities. He denied experiencing any abuse or violence. (PSR ¶ 46). This upbringing fostered a strong sense of devotion to his family that shaped his choices growing up and shaped his primary motivations as an adult. The defendant completed five years of education in Venezuela. He withdrew from school to help his family financially. (PSR ¶ 55). He stated that he began working as a fisherman at the age of 15.

Mr. Mendoza is currently in a common law relationship with his wife, Daryelsi Caraballo. He reported that Ms. Carabello is a homemaker and they have three children together. Their children are Darbel Jose Mendoza, age 21, Daynel Roberto Mendoza, age 19, and Dayne Alberto Mendoza, age 18. The defendant indicated that his sons are fishermen. (PSR ¶ 48) Upon his release from custody, he plans on returning to his family in Venezuela. (PSR ¶ 49).

Mr. Mendoza has been incarcerated since November 6, 2019. He has spent the majority of that time at the Pinellas County Jail and then later at the Hernando County Jail. The pretrial detention in this case has been extraordinary in so far as the length and the conditions of pretrial detention have been adversely affected by the by the covid pandemic. There have been extended periods of quarantine where his ability to communicate with either his counsel or his family have been severely

hampered. He has lived in cramped conditions in facilities that have at times been designated "covid hot spots". His current facility is not allowing in-person, video or telephonic visitation with counsel.

## **UNITED STATES V. BOOKER AND 18 U.S.C. § 3553(a)**

Mr. Mendoza has pled guilty to a crime with a ten (10) year minimum mandatory. Based upon a total offense level of 33 and a criminal history category of I, his currently calculated guideline range at this time is 135-168 months. The decision of the United States Supreme Court in United States v. Booker, has rendered the United States Sentencing Guidelines effectively advisory. Booker, 125 S. Ct. 738, 756 (2005). Pursuant to Booker, sentencing courts are required to consider a defendant's Guideline range, but may tailor the sentence in light of other statutory concerns as well.

## **THE APPLICATION OF 18 U.S.C. § 3553(a) TO MR. MENDOZA'S CASE**

Section 3553(a)(1-5), lists four purposes of sentencing, which can be summarized as:

(1) just punishment;

(2) deterrence;

(3) protection of the public; and

(4) rehabilitation.

Under the parsimony principal, the sentence in this case should be the minimum necessary to accomplish the listed purposes. *See* 3553(a). Each of the purposes listed by 3553(a)(2) would be achieved by a sentence below the guidelines in the instant case. Mr. Mendoza has committed a serious federal crime. However, the nature and circumstances of his offense, his personal history, and characteristics, weigh in favor of a sentence that does not require the term of imprisonment reflected by the guidelines. The probation office noted that Mr. Mendoza was reared under impoverished circumstances. Due to his limited education his job opportunities were limited. This situation was exacerbated by the catastrophic economic conditions that have plagued Venezuela in recent years. These factors in his overall personal characteristics and demographics made him susceptible to recruitment for participation in the international drug smuggling venture.

While the behavior was clearly legally wrong, it was not of a violent nature and was not particularly sophisticated. Additionally, his motivation for his participation in the instant offense was devotion to his family, who are now faced with hardships that occurred due to his incarceration, mitigate in favor of this Honorable Court considering a sentence in variance from the guideline range.

Mr. Mendoza admitted his guilt in a timely fashion and debriefed thoroughly with the case agents. Unfortunately, his limited knowledge of the inner workings of the larger conspiracy has not resulted in a Government's Motion for Downward

Departure. However, Mr. Mendoza's truthful cooperation is still a factor that the Court can consider in Mr. Mendoza's efforts toward rehabilitation, his likelihood of being a continued danger to society in general, and a factor to be considered in ascertaining a just punishment. Lack of any prior criminal history is likewise indicative of a person who is unlikely to be a continued danger to society. He has a clear history of being able, despite hardships, to work industriously and devote himself to providing for his family.

    The unique factual circumstances of this case likewise should be considered in assessing whether a variance from the calculated guidelines should granted. These circumstances are described in greater detail below in the portion of this memorandum pertaining to role in the offense. For the sake of efficiency, counsel would incorporate those facts as they apply to the consideration of variance as well as a downward departure for a minor role in the offense.

    Mr. Mendoza is truly remorseful for his conduct in this case. Both for the harm his absence has caused to the family he desired to support and for the harm to the public in a broader sense. It is his hope that he can benefit from whatever rehabilitative programs and educational opportunities are available in the prison system and that he can return to his home and lead a productive life for his family. However, his primary focus is that he be incarcerated at a facility that affords him the opportunity to work and send whatever he can to help support his family while

he is incarcerated.

## **APPLICATION OF THE AMENDMENT TO U.S.S.G. 3B1.2 TO MR. MENDOZA'S CASE**

The United States Sentencing Commission amended U.S.S.G 3B1.2. on November 1, 2015. The Commentary Application Notes: Section 3(c) provides guidance for the courts to consider in determining whether to apply a mitigation adjustment. It specifically lists 5 non-exhaustive factors:

i. the degree to which the defendant understood the scope and structure of the criminal activity;
ii. the degree to which the defendant participated in planning or organizing the criminal activity;
iii. the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
iv. the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
v. the degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under the guideline. The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such

a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

We disagree with the lack of a decrease in the Defendant's offense level for role in the offense under § 3B1.2(b). The circumstances of this case could be argued to support a designation of a minor role in the offense under § 3B1.2(b). Under the rendition of the facts in the plea agreement, the Defendant clearly was a minor participant in the criminal activity alleged in this case. There was no evidence to suggest that the Defendant's role was anything other than as a low-ranking crewmember on a fishing vessel. The role of the Defendant was that of a common fisherman/deckhand. While another member of the crew held a position of actual authority, the Defendant possessed no such decision-making authority. The captain made all decisions concerning navigation and the captain controlled the GPS. The Defendant possessed no significant nautical skills. The Defendant did not own the boat. The Defendant controlled neither the amount or types of drugs intended to be delivered nor the negotiated price of the contraband. The Defendant was unaware in advance that there was a cocaine venture involved on any specific fishing trip until a fast boat arrived at sea with the contraband to be transported. There is not any evidence the Defendant had any knowledge of the value of the contraband. There is no evidence that he participated in any way in the growing, processing, packaging, or transportation of the contraband other than his participation in the transportation

of the contraband aboard the vessel. There is no evidence that the Defendant had any knowledge concerning the ultimate intended destination of the contraband. Consequently, the degree to which the Defendant understood the scope and structure of the criminal activity was very limited and he was not involved in the planning or organizing of the criminal activity. The Defendant did not recruit any co-conspirators, he was not involved in any aspect of the conspiracy beyond his limited participation on the voyage, he was neither the source nor the owner of the cocaine on the vessel, he did not have the ability to make decisions, give orders or change plans, he did not control payment of any crew member.

The Defendant should be viewed as a minor participant since he appears to be nothing more than an assistant courier for the cocaine for a very brief segment of the overall transportation process. Therefore, the guideline range should be adjusted accordingly.

## LEGAL ANALYSIS FOR MINOR ROLE

Mr. Mendoza should receive a two-level reduction for minor role. Mr. Mendoza's role in this case was simply as a courier of the cocaine. He was not a leader or organizer, he had no authority in this matter, and had no proprietary interest in the operation. He was to be paid only to help to transport the cocaine as one member of a 14-man crew. The seminal Eleventh Circuit case dealing with the determination of a mitigating role reduction pursuant to U.S.S.G. §3B1.2 is United

States v. Rodriguez De Varon, 175 F.3d 930 (11th Cir. 1999). In the De Varon case, the Eleventh Circuit established a two-part test for determining whether a defendant qualifies for a minor role reduction. De Varon, 175 F.3d at 934. As the Eleventh Circuit noted, "[f]irst, and foremost, the district court must measure the defendant's role against [his] relevant conduct, that is, the conduct for which [he] has been held accountable under U.S.S.G. §1B1.3." Id. The Eleventh Circuit further stated the second part of the test requires that "where the record evidence is sufficient, the district court may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." Id. the guideline involved in the issue of minor role is U.S.S.G. §3B1.2; the most recent amendment to it is a more inclusive guideline provision for individuals like Mr. Mendoza.

The pertinent changes appear not in the text of §3B1.2 itself, but rather in the commentary of Application Note 3(C), which instructs sentencing courts to apply a fact-based determination in deciding whether the mitigating adjustment should be -4 levels (a "minimal" role), -2 levels (a "minor" role), or -3 levels (roles falling between minor and minimal). Specifically, the Commission has added text setting forth a non-exclusive list of factors to examine, including: the defendant's understanding of the scope and structure of the crime; the degree of the defendant's participation in planning or organizing the crime; the extent to which the defendant exercised or influenced decision-making authority; the nature and extent of the

defendant's participation in the offense itself; and the degree to which the defendant stood to benefit from the unlawful activity.

Significantly, Application Note 3(C) advises sentencing courts that merely because "a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in this criminal activity." This language was added in specific response to cases that concluded a defendant's indispensable role was incompatible with a mitigating role adjustment.

On September 20, 2016, the Eleventh Circuit considered a case involving the U.S.S.G. section 3B1.2 Amendment 794. The Court of Appeals reversed and remanded for re-sentencing a case involving a denial of minor role for the captain of a "go-fast" vessel that was transporting cocaine in international waters. In United States v. Cruickshank, 837 F. 3d 1182 (11th Cir. 2016) the 11th Circuit determined that the sentencing court in deciding a minor role "should perform an inquiry based on the totality of circumstances, taking into account the variety of factors laid out in DeVaron and Amendment 794." Id. at 22-23. The purpose of the minor role adjustment is to ensure that a low-level participant in a conspiracy does not receive the same sentence as a higher-level participant in a conspiracy, including an average participant. Even though, all the defendants in a conspiracy are potentially held

accountable for the total quantity of drugs involved, lesser involved defendants should not be receiving the same sentence as those who are more involved in the entire scheme. The only way to fairly apply a role assessment is to compare the defendant to all those charged and uncharged who were involved in the conspiracy.

Since, Mr. Mendoza is being held for an amount of cocaine that places him at the same offense level as the owners, and those charged with logistics, his role must be compared to all the other discernable or obvious participants in the conspiracy. In the present case, the factors weigh in favor of Mr. Mendoza's minor role status. Factually, Mr. Mendoza was paid by others in the conspiracy. Mr. Mendoza had no equity interest in the drugs. He had no role in planning the criminal scheme and absolutely no role in the ultimate distribution of the cocaine. Other factors supporting Mr. Mendoza's minor role status include the fact that he did not recruit any other participants, he had little knowledge of the scope of the broader conspiracy, he reported to the next larger player in the conspiracy. Distinctly, no one reported to him. Mr. Mendoza had no decision-making authority and limited discretion in how he performed the duties required of him by those who were in a decision-making position.

Clearly under these facts, Mr. Mendoza was less culpable than most of the participants. Specifically, he was less culpable than the vessel's master, the loaders, the logistics people, the distributors, the purchaser of the cocaine, the seller of the

cocaine or any other unindicted co-conspirators. He was essentially a mule on a fishing boat. Based on the forgoing argument and legal authority, Mr. Mendoza's objections should be granted and he should receive a two-level reduction for minor role. Such a result will be consistent with one of the main goals of the guidelines by insuring that (absent the mandatory ten-year sentence) he does not receive the same sentence as individuals that are more culpable than him, thus running astray of the guiding goal that similarly-situated defendants should be punished similarly.

## CONCLUSION

For the reasons stated herein, Mr. Mendoza, respectfully urges this Court to fashion a sentence that will be reasonable and will adequately take into account the advisory guideline range and the factors set forth at 18 U.S.C. § 3553(a). Such a sentence will be a fair and just punishment.

Respectfully Submitted,

**/s/ Scott L. Robbins**
Scott L. Robbins, Esquire
Florida Bar No. 0352111
709 W. Azeele Street
Suite A
Tampa, Florida 33606
Telephone: (813) 258-2909
scottlrobbins@aol.com
scottrobbins@aol.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of March, 2021, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court.

**/s/ Scott L. Robbins**
Scott L. Robbins, Esquire
Florida Bar No. 0352111
709 W. Azeele Street
Suite A
Tampa, Florida 33606
Telephone: (813) 258-2909
scottlrobbins@aol.com
scottrobbins@aol.com